**William H. SULLIVAN, Jr., Plaintiff,**

v.

**Paul TAGLIABUE, et al., Defendants.**

**Charles W. SULLIVAN, Plaintiff,**

v.

**Paul TAGLIABUE, et al., Defendants.**

**Civ. A. Nos. 92–10592–H, 92–10915–H.**

United States District Court,
D. Massachusetts.

July 30, 1992.

Alan R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., Joseph V. Cavanagh, Jr., Blish & Cavanagh, Providence, R.I., Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for William H. Sullivan, Jr. and Charles W. Sullivan.

Sarah Chapin Columbia, Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, Mass., Matthew F. Medeiros, Flanders & Medeiros, Providence, R.I., John Vanderstar, Ethan M. Posner, Covington & Burling, Washington, D.C., for Paul Tagliabue in No. 92–10592–H.

Sarah Chapin Columbia, Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, Mass., for Pete Rozelle, Nat. Football League, The Five Smiths, Inc., Indianapolis Colts, Inc., Buffalo Bills, Inc., Chicago Bears Football Club, Ltd., Cleveland Browns, Inc., Cincinnati Bengals, Inc., Dallas Cowboys Football Club, Ltd., and PDB Sports, Ltd. in No. 92–10592–H.

Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, Mass., for the Detroit Lions, Inc., Green Bay Packers, Inc., Houston Oilers, Inc., Los Angeles Rams Football Co., Minnesota Vikings Football Co., New Orleans Saints, Ltd., Chargers Football Co., New York Jets Football Club, Inc., B & B Holdings Inc., Pittsburgh Steelers Sports, Inc., Tampa Bay Area NFL Football, Inc., Pro–Football, Inc., and Seattle Professional Football Club, Inc., in No. 92–10592–H.

Sarah Chapin Columbia, Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, Mass., Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for defendants in No. 92–10915–H.

## ORDER

HARRINGTON, District Judge.

After hearing oral argument, the Court denies Defendants' Motions to Dismiss the above-entitled cases.

The issue presented by these cases is whether the National Football League's rule which prohibits the sale of shares of interest in an National Football League franchise to any company not engaged in the business of professional football can be viewed as a restraint on trade in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).

The Sherman Act, 15 U.S.C. § 1, is applicable to professional sports leagues and teams, including professional football teams and their owners. *North American Soccer v. National Football League,* 670 F.2d 1249, 1257 (2d Cir.1982); *Los Angeles Memorial Coliseum Com'n v. National Football League,* 726 F.2d 1381, 1390 (9th Cir.1984). These cases establish that agreements entered into between professional football owners restricting the right of a fellow owner to engage in "cross ownership" in a separate sport and to relocate his team to another city, respectively, are justiciable under the Sherman Act. The instant cases involve the allegation that an agreement entered into between professional football owners restricting the right of a fellow owner to sell shares of interest in his team violates the Sherman Act. The *North American Soccer* case, the *Los Angeles Memorial Coliseum Com'n* case and the instant cases present a similar issue, namely, to what extent a group of businessmen can enforce an agreement with one of their co-contractors to the detriment of that co-contractor's right to conduct his business in the manner in which he pleases.

To establish a cause of action under the Sherman Act, plaintiffs must allege and prove three essential elements: (1) an agreement among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain

competition; (3) and which actually causes injury to competition. *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 290 (9th Cir. 1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); *accord Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1296 (9th Cir.1983). The three essential elements have been pleaded in both cases.

The Plaintiff William Sullivan was the founder and sole or managing owner of the New England Patriots professional football franchise from 1960 to 1988. He alleges that "[f]or many years prior to 1986 and continuing to the date of this complaint, the defendants created and selectively enforced a rule which prohibited the sale, in whole or in part, of the shares of interest of an NFL franchise to any company not engaged in the business of professional football. The rule could be changed or waived only by a vote of three quarters of the NFL owners ..."

The plaintiff further alleges that the intended effect of the rule was, in part:

to assist the defendants to acquire and maintain a monopoly in the business of professional football; ... to exclude competitive entry into the business of professional football by commercial companies ...; ... to prevent football fans and members of the community from acquiring a "rooter's share" of a professional football team ...; to prevent owners of franchises desiring to sell all or part of their interest from securing a competitive market price since competition from all of corporate America was not only impaired but completely foreclosed; to deny to owners access to potential buyers best in position to afford the highest market price for all or part of the shares or interest; and to foreclose virtually all competition for the sale or purchase of all or part of an NFL franchise.

The plaintiff claims that the enforcement of the league rule which prohibited the sale of 49 percent of the franchise to a group of investors, who were not engaged in the business of professional football, has "directly caused injury to the plaintiff by denying him access to a competitive market place that would have saved 51 percent of his franchise." In other words, the Plaintiff William Sullivan alleges that the rule limited his ability to raise the capital necessary to maintain a profitable franchise and to thereby compete with the other football franchises.

The Plaintiff Charles W. Sullivan was a Vice President of the New England Patriots professional football franchise from 1975 to 1988. Charles Sullivan was the owner of all shares of the corporate entity known as Stadium Management Corporation, a Massachusetts corporation, that formerly owned Sullivan Stadium in Foxboro, Massachusetts. Stadium Management Corporation went into bankruptcy in 1988 and Charles Sullivan subsequently received an assignment of all causes of action or claims owned by the corporation. Charles Sullivan sues in his individual capacity and as the assignee of these claims.

The Plaintiff Charles Sullivan claims that the enforcement of the rule which bars the sale of a franchise to any company not engaged in the business of professional football blocked the refinancing of the stadium. Charles Sullivan claims that due to the defendants blocking the refinancing the Plaintiff Charles Sullivan suffered the following losses:

1. The enhanced market value of the stadium, if the planned renovation had been completed.

2. The enhanced market value of the stadium resulting from a lease extension with the Patriots which would have occurred if the stadium had been renovated.

3. The enhanced market value of a renovated stadium to promoters for other entertainment and sports events.

In other words, the Plaintiff Charles Sullivan alleges that the rule interfered with his ability to refinance Sullivan Stadium and to thereby compete with other stadia in attracting other sports events and other entertainment.

Because restrictive agreements between members of a joint venture, such as members of a football league, can under

some circumstances have legitimate purposes as well as anticompetitive effects, they are subject to scrutiny under the rules of reason. *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). *North American Soccer v. National Football League, supra*, at 1259.

The Court in *Los Angeles Memorial Coliseum Com'n v. National Football League, supra*, held that the rule of reason, under which restraints of trade are analyzed under federal antitrust law, requires the *fact finder* to decide whether, under all the circumstances of the case, the agreement imposes an unreasonable restraint on competition. The Court stated, on page 1391, that the "[r]ule of reason analysis calls for a 'thorough investigation of the industry at issue and a balancing of the arrangement's positive and negative effects on competition.'"

The instant case would "entail an inquiry into 'whether the challenged agreement is one that promotes competition or one that suppresses competition.'" *North American Soccer v. National Football League, supra*, at 1259, *quoting National Society of Professional Engineers v. United States*, 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978).

█ Whether an agreement between owners of teams in a professional football league violates the antitrust law requires an in-depth investigation of the business practices of a particular and highly unique industry and a detailed analysis of its findings to determine whether such an agreement among the competitors involved in that industry promotes or reduces competition. A decision based on such complex financial and economic factors cannot be rendered as a matter of law upon a Motion to Dismiss, but only by a fact finder after a full evidentiary exploration of such factors.

SO ORDERED.